UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| MARK A. WITKOWSKI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-1142 |
| | ) | |
| STEVE KALLIS, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER AND OPINION**

Now before the Court is Petitioner Mark A. Witkowski's ("Petitioner" or "Witkowski") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1).[1] For the reasons set forth below, Petitioner's § 2241 Petition is DENIED.

### I. BACKGROUND[2]

Witkowski is currently on supervised release in the Northern District of Illinois and was previously incarcerated with the Federal Bureau of Prisons at the Federal Correctional Institution in Pekin, Illinois. Witkowski was convicted in June 2015 of two counts of Filing a False Claim Against the United States, in violation of 18 U.S.C. § 287, in relation to a tax fraud scheme in which he prepared and filed false federal income tax returns made out in the names of actual tax payers and collected the refunds. The district court sentenced Witkowski on each count to 30 months of imprisonment, to be followed by two years of supervised release; the sentences were to be served concurrently.

---

[1] Citations to documents filed in this case are styled as "Doc. __."
[2] As dictated by the analogous federal habeas corpus rules for proceedings under 28 U.S.C. § 2254 and § 2255, the facts recounted here are taken from Respondent's Response to the Petition, (Doc. 16), unless otherwise noted. *See* 28 U.S.C. § 2248.

Witkowski began serving his sentence on approximately July 28, 2015. Around October 2016, the Bureau of Prisons' Residential Reentry Management Office received a referral from FCI Pekin recommending that Witkowski receive 151 to 180 days of residential reentry center ("RRC") placement. The referral indicated that Witkowski would release to Chicago, Illinois, which was where he had been sentenced, and further noted that the Northern District of Illinois would provide supervision upon his release. The referral also stated that Witkowski would eventually be attempting to relocate to the Rockford, Illinois, area to reconnect with his children and requested "up to six months RRC in Janesville, Wisconsin," which is located in the Western District of Wisconsin. The referral noted alleged alcohol issues and that Witkowski was presently receiving treatment. That same month, Witkowski signed a supervised release plan that similarly noted that BOP was requesting up to six months placement in an RRC in Janesville, Wisconsin, and noted the planned Rockford relocation. His supervised release plan also stated that he did not have a release residence. This signed plan, with other documents, was transmitted to the Residential Reentry Management Office. The referral and supervised release plan noted that Witkowski had little family support and further acknowledged that he had no present job prospects.

Witkowski was subsequently approved for a 157-day placement at the Salvation Army RRC in Chicago. Per the Residential Reentry Management Office's review, there is no indication in the file that Witkowski later requested a transfer to Wisconsin. Witkowski administratively appealed this decision, arguing that he should be placed in RRC for the maximum 12 months. His appeals were denied.

On April 26, 2017, Witkowski transferred from FCI Pekin to the RRC in Chicago. On July 3, 2017, Witkowski was placed on home confinement through the BOP. On September 29,


2

2017, Witkowski was released from BOP custody, having earned 117 days of good time credit toward his sentence. At that time, Witkowski began serving his concurrent two-year terms of supervised release. These terms of supervised release did not include a period of time on home confinement.

In April 2017, shortly before his transfer to the Chicago RRC, Witkowski filed this Petition for Habeas Corpus pursuant to 28 U.S.C. § 2241. In this Petition, Witkowski argues that he should have received a 12-month placement in a RRC prior to being released. Pet. at pp. 6-7 (Doc. 1). He argues that by completing the Non-Residential Drug Abuse Program in October 2016, the BOP was contractually obligated to give him 12 months in a RRC facility. *Id*. He also argues that his Case Manager willfully and wantonly delayed his RRC assessment meeting, that BOP staff abused their discretionary authority and his due process rights by constraining resources of the Janesville, RRC. *Id*. at pp. 7-8. Finally, he argues that BOP staff maliciously misrepresented his history such that his unique reentry needs and deficits—specifically his homelessness—were not taken into account in the RRC decision. *Id.* at pp. 9.

In October 2017, the Court ordered Respondent to respond to the Petition. (Doc. 4). Respondent filed a Motion to Dismiss the Petition (Doc. 5), arguing the Petition was moot because Witkowski had already been released from prison. The Court granted the motion to dismiss in November 2017 (Doc. 8). However, Witkowski moved to set aside the dismissal because he had not received a copy of Respondent's motion to dismiss (Doc. 10). The Court granted Witkowski's motion and Witkowski filed an objection to Respondent's motion to dismiss in January 2018 (Doc. 11). In August 2018, the Court denied Respondent's motion to dismiss and ordered Respondent to respond to Witkowski's motion (Doc. 12).

Respondent has filed his response (Doc. 16). Witkowski has not filed a timely reply. This order follows.

## II. DISCUSSION

**A. Witkowski's Release from Prison Does Not Render his Claim Moot.**

Respondent again argues Witkowski's claims are moot due to the fact that Witkowski is no longer in BOP custody and is currently serving a term of supervised release. However, as noted in this Court's August 13, 2018 Order (Doc. 12), the Court can only deem the Petition in this case moot if it is "confident" the Petitioner "cannot benefit" from a favorable decision. *Pope v. Perdue*, 889 F.3d 410, 415 (7th Cir. 2018), *reh'g denied* (July 30, 2018) (*citing United States v. Trotter*, 270 F. 3d 1150, 1152 (7th Cir. 2001)). In *Pope,* the Seventh Circuit held that because a finding that the petitioner spent too long in prison would "carry great weight in a § 3583(e) motion to reduce" the term of supervised release, the case was not yet moot. Respondent argues that a finding that Witkowski should have spent more time an RRC would not carry great weight in a § 3583(e) motion to reduce his term of supervised release, making Witkowski's case substantially weaker than the case in *Pope*. Resp. at pp. 14-16 (Doc. 16). However, while such a finding would not carry as much weight as a finding that he spent too long in prison, it would certainly carry at least *some* weight. Given the high hurdle of proving mootness and the Seventh Circuit's holding in *Pope*, the Court finds that there is still a sufficient potential benefit to keep the case alive.

**B. This Court's Jurisdiction Over Witkowski's Claims is Unclear.**

As this Court has previously noted, there is some disagreement among the courts in the Seventh Circuit as to whether a habeas corpus petition is the proper vehicle to make a claim regarding halfway house designations. *See Perry v. Krueger*, No. 15-1298, 2015 WL 6500915,

at *1 (C.D. Ill. Oct. 27, 2015) (collecting cases). Even assuming a habeas corpus petition is the proper vehicle, Respondent argues that the Court no longer has jurisdiction over this case because the proper respondent is not within this Court's territorial jurisdiction after Witkowski's transfer out of prison. District courts may grant writs of habeas corpus "within their respective jurisdictions," 28 U.S.C. § 2241(a), and such writs "shall be directed to the person having custody of the person detained." 28 U.S.C. § 2243. In a conventional habeas action challenging physical confinement, "there is generally only one proper respondent"—the "person who has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge." *Rumsfeld v. Padilla,* 542 U.S. 426, 434–35, 124 S.Ct. 2711 (2004). Since "the court issuing the writ [must] have jurisdiction over the custodian," generally in "habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." *Id.* at 442–43 (quotation omitted). However, jurisdiction in a habeas action is determined at the time an action is filed and the Seventh Circuit has previously held that jurisdiction is not lost when a prisoner is transferred. *See Ross v. Mebane,* 536 F.2d 1199, 1201 (7th Cir. 1976); *United States ex rel. Circella v. Sahli,* 216 F.2d 33, 37 (7th Cir. 1954), *cert. denied,* 348 U.S. 964 (1955); *Coburn v. Reno*, No. 98 C 1453, 1999 WL 138808, at *2 (N.D. Ill. Mar. 5, 1999) ("It is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and this jurisdiction, once established, is not destroyed by a transfer of the petitioner and the accompanying custodial change.").

However, in *Rumsfeld*, the Supreme Court stated in dicta that "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent *within its jurisdiction who has legal authority to effectuate the prisoner's release.*" *Rumsfeld,* 542 U.S. at 441

5

(emphasis added). Courts interpreting this language have been split on whether jurisdiction is lost when a prisoner is transferred to a custodian outside of the court's territorial jurisdiction after a petition is properly filed. *See, e.g., Warren v. United States of Am., Inc.*, No. CA 3:10-1245-MBS-JRM, 2011 WL 4435655, at *4 (D.S.C. Sept. 23, 2011) (compiling cases). *See also Mitchell v. Bledsoe*, No. 06-624-DRH, 2009 WL 3156689, at *1 (S.D. Ill. Sept. 28, 2009) ("a district court can be divested of jurisdiction if a petitioner is transferred and the new custodian is found outside the district.").

While the Seventh Circuit has not readdressed this issue post-*Rumsfled*, all Courts of Appeals that have considered the issue have continued to find that a prisoner's transfer does not result in the district court losing jurisdiction. *See Griffin v. Ebbert*, 751 F.3d 288, 290 (5th Cir. 2014) ("Jurisdiction attached on that initial filing for habeas corpus relief, and it was not destroyed by the transfer of petitioner and accompanying custodial change."); *Mujahid v. Daniels*, 413 F.3d 991, 994 (9th Cir. 2005) (same); *Pinson v. Berkebile*, 604 F. App'x 649, 652–53 (10th Cir. 2015) (unpublished) (finding that, while after a prison transfer petitioner's "immediate physical custodian is no longer within the district court's jurisdiction," the "transfer does not defeat that initial jurisdiction"). As is the case here, the petitioner in *Mujahid* initially filed a proper habeas petition in the district court where he was being held and was subsequently transferred and placed in supervised release. *Mujahid*, 413 F.3d at 994. Since "a habeas petitioner remains in the custody of the United States while on supervised release" the Ninth Circuit held that jurisdiction was not destroyed by this custodian change. *Id.* Indeed, given the frequent transfer of prisoners in federal custody, any other rule would have the potential for forum games and unreasonable delays in a petitioner's case. *See Griffin* 751 F.3d at 290. However, the Court need not conclusively rule on these jurisdictional issues to resolve this case.

6

Even assuming that Witkowski may proceed under § 2241 and that the Court had and continues to have jurisdiction to consider his petition, he is still not entitled to the relief sought.

### C. Witkowski's Claims Fail on the Merits.

Under the Second Chance Act, 18 U.S.C. § 3624(c), the BOP has the authority to place inmates in community confinement facilities during the final portion of their sentences for up to 12 months. Specifically:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

*Id.* The language of the statute clearly establishes that inmates are not entitled to the full 12 months of placement in a halfway house. Section 3624(c) requires only that "to the extent practicable," the BOP must allow an inmate to spend "a portion of the final months" of his term under conditions that will allow him to prepare and adjust for reentry into the community. *Id.* The language is discretionary, and there is simply no guarantee to placement for the maximum amount of time available. *See also, Olim v. Waukinekona,* 461 U.S. 238, 245 (1983) (holding that a prisoner has no constitutional right to select a particular correctional facility for his placement or to be transferred to a different facility upon request).

The amount of time to be allocated to each inmate is left to the considerable discretion of the BOP. *Pence v. Holinka,* No. 09-cv-489-SLC, 2009 WL 3241874, at *1 (W.D.Wis. Sept. 29, 2009) (*citing Sessel v. Outlaw,* No. 08-cv-00212, 2009 WL 1850331, at *4 (E.D.Ark. 2009); *Daraio v. Lappin,* No. 3:08-cv-1812- MRK, 2009 WL 303995 (D.Conn. Feb. 9, 2009) (BOP retains discretion under the Second Chance Act to decide whether and when an inmate should be placed in a halfway house.)). In exercising this discretion, the BOP must make decisions on an

7

individual basis considering the factors listed in 18 U.S.C. § 3621(b) in an effort to "ensure that placement in a community correctional facility . . . is . . . of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6). Factors to be considered are: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence concerning the purposes for which the sentence was determined to be warranted or recommending a specific type of facility; and (5) any pertinent policy statement issued by the Sentencing Commission. 18 U.S.C. § 3621(b). These statutory provisions are echoed in the BOP's promulgated rules set forth at 28 CFR §§ 570.20–21.

In considering Witkowski's eligibility for community confinement placement, the record reveals FCI-Pekin's institutional referral recommended 151-180 days placement in an RRC. This recommendation was reviewed by the Residential Reentry Management (RRM) Office to determine Witkowski's exact RRC placement. The RRM Office considered the applicable factors and determined that 157 days would be appropriate. This decision noted Witkowski's relatively short prison sentence, his lack of history of drug and alcohol abuse, and his lack of mental health concerns. The decision also noted Witkowski's planned eventual release to the Northern District of Illinois for his supervised release. Finally, the supervised release plan noted that he had little family support and no present job prospects. And, contrary to Witkowski's claim that his homelessness was not considered, the plan noted that he did not have a residence.

Witkowski also argues that, in addition to the considerations of the statute, the BOP is "contractually" obligated to grant prisoners 12 months in a halfway upon completion of the non-residential drug abuse program (NR-DAP). However, Witkowski simply appears to be mistaken about the nature of BOP Program Statement 5330.11 and has not provided any support for his

8

notion that there was a contract or that it was violated. Further, even if there was a violation of the BOP's program statement, this "is not a violation of federal law" that this Court can review in a habeas claim. *See Reeb v. Thomas*, 636 F.3d 1224, 1228 (9th Cir. 2011).

For these reasons, the record supports the conclusion that the BOP followed the provisions of the statute and considered the relevant factors in making its assessment. "If the [BOP] considers the relevant factors in making its determination, a challenge ... could not succeed unless the plaintiff could show that the decision was arbitrary, capricious, or otherwise an abuse of discretion, a difficult standard for the plaintiff to meet." *Woods v. Wilson*, No. 09-CV-0749, 2009 WL 2579241, at *2 (N.D. Ill. Aug. 19, 2009) (*citing Tristano v. Fed. Bureau of Prisons*, No. 07-C-113-C, 2008 WL 3852699, at *1 (W.D. Wis. May 15, 2008)).

It is not the role of this Court to conduct an independent review of the § 3621(b) factors and make a de novo determination as to Witkowski's placement in a halfway house. Rather, the BOP's decision is entitled to deference so long as it is not arbitrary, lacking any rational basis, or otherwise contrary to the requirements of the statute. Witkowski has not shown that the BOP's decision in his case implicates any of these concerns, and his disagreement with the outcome is insufficient.

Witkowski's final argument is that the BOP unreasonably delayed his RRC assessment. While, again, this claim is almost certainly not reviewable in habeas, this Court finds that any delay was harmless. Pursuant to the BOP's April 14, 2008 Memorandum, each inmate's pre-release placement review is to take place somewhere between 17 and 19 months before the inmate's release. The record is unclear as to whether the review was conducted within the BOP's stated timeframe, but Witkowski has failed to show that there was any harm even if there was a delay. The BOP staff still conducted Witkowski's assessment at least by September 2016,

early enough to have been able to recommend Witkowski for up to 12 months of placement in a RRC, but instead recommended he be placed in an RRC for only 151-180 days.  This Court can discern no reason why earlier consideration of the § 3621(b) factors would have changed that result and Witkowski does not present one.  *See Ewing v. Carter*, No. 2:13-CV-56, 2014 WL 1516332, at *6 (N.D.W. Va. Apr. 17, 2014), *aff'd,* 583 F. App'x 278 (4th Cir. 2014).  Moreover, his argument that he is entitled to 12 months of RRC placement is based on his completion of the NR-DAP program, which he did not complete until *after* the September assessment.  His request for relief pursuant to § 2241 must therefore be denied.

### III.  CONCLUSION

For the reasons set forth above, Petitioner Witkowski's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1) is DENIED.  This matter is now terminated.

Signed on this 9th day of January 2019.

*s/ James E. Shadid*
James E. Shadid
Chief United States District Judge